IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| ZHEJIANG HAILIANG CO. LTD., | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | 1:23-cv-1606 (LMB/LRV) |
| | ) | |
| KME GERMANY GMBH, | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff. | ) | |

MEMORANDUM OPINION

Pursuant to 15 U.S.C. § 1071(b), plaintiff/counterclaim defendant Zhejiang Hailiang Co.

Ltd. ("Hailiang") has filed a seven-count First Amended Complaint ("FAC") challenging the

Trademark Trial and Appeal Board of the United States Patent and Trademark Office's

("TTAB") final decision denying Hailiang's application for the mark "HME" (Stylized).

Defendant/counterclaim plaintiff KME Germany GmbH's ("KME") opposed the application

before the TTAB on the ground that the mark was likely to cause confusion with KME's marks.

Before the Court is KME's Motion to Dismiss Counts IV, V, VI, and VII, and portions of

Counts I and III of the FAC under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which

relief may be granted; and portions of Counts V and VI of the FAC for lack of subject matter

jurisdiction under Fed. R. Civ. P. 12(b)(1). KME also moves under Fed. R. Civ. P. 12(f) to strike

FAC paragraphs 55-60, 62-70, 166-174, and the FAC's Prayer for Relief section (d), as well as

the First, Seventh, Eighth, Ninth, Tenth, and Twelfth Affirmative Defenses to KME's

infringement counterclaim. For the following reasons, KME's Motion to Dismiss will be

granted in part and denied in part.

I

**A. <u>Factual Background</u>**

According to the FAC, Hailiang is a Chinese leading global manufacturer of nonferrous metals, copper, copper alloy, and brass products, including rods, fittings, and tubular products. [Dkt. No. 27] at ¶ 8. Hailiang has used this stylized logo in the United States and elsewhere:



<u>Id.</u> at ¶ 10.

Defendant KME is a German company that is "one of the world's largest manufacturers of copper and copper alloy products" with a "worldwide distribution network." <u>Id.</u> at ¶¶ 14-16. KME has used this stylized logo in the United States and elsewhere:



<u>Id.</u> at ¶ 77.

In 2019, Hailiang purchased KME's brass rods business based in Germany, Italy, and France, as well as its tube business (including copper tubes) based in Germany and Spain pursuant to a Share Asset Purchase Agreement ("APA") for €119 million EUR, approximately $129 million USD. <u>Id.</u> at ¶ 17. The APA was signed on January 18, 2019 and took effect on April 1, 2019. <u>Id.</u> at ¶ 18. Sometime around the effective date of the APA, Hailiang formed a new entity called HME Copper Germany GmbH, based at the former KME Facility in Menden, Germany, out of assets it had purchased from KME. <u>Id.</u> at ¶ 20. Apparently, with KME's agreement, Hailiang renamed the several former KME entities it acquired in the APA with "HME" as shown below:

2

- KME Brass France SAS became HME Brass France SAS

- KME Brass Germany GmbH became HME Brass Germany GmbH

- KME Brass Italy S.p.A became HME Brass Italy S.p.A

- KME Ibertubos S.A.U. became HME Ibertubos S.A.U

(hereinafter, "the HME business"). Id. at ¶¶ 22-25. The name "HME" reflects a combination of H, for Hailiang, and ME for Metals Europe. Id. at ¶ 26.

The FAC alleges that Franz Thiele, Managing Director of KME Brass Germany GmbH, was closely involved in selecting and developing the HME name and logo starting at least as early as December 2018. Id. at ¶¶ 35, 38. The following logo was ultimately developed:



Id. One month before the APA's effective date, top officials at KME signed contracts with HME for future business relationships, noting in those contracts that the company was "future HME." Id. at ¶ 51. Members of the Executive Board of KME also signed a Transitional Service Agreement with "HME Copper Germany GmbH" on March 31, 2019. Id. at ¶ 52; see also ¶¶ 33-40.

Shortly after the APA took effect, Hailiang filed a trademark application with the European Union Intellectual Property Office ("EUIPO") asserting rights in a design mark containing the letters "HME." Id. at ¶ 27. On June 16, 2019, after learning of the EUIPO application, KME sent a letter to Hailiang asserting its objection to the application and its belief that the marks "KME" and "HME" were confusingly similar. Id. at ¶ 57. Notably, the letter indicated that KME's objection to the application might be remedied if Hailiang limited the application "to products either made of brass or being tubes or pipes" that are not products

3

manufactured or sold by KME.  Accordingly, the letter requested that Hailiang "specify the corresponding goods so that there are no overlaps."  Id. at ¶ 57.  The FAC alleges that "[i]t was thus clear from this letter that any objection KME had to the registration of HME was only as to goods outside the HME [b]usiness."  Id. at ¶ 59.

On July 29, 2019, KME filed its opposition in the EUIPO to Hailiang's EUTM Application No. 018045936 **HME**, only challenging the registration for goods not covered by the HME business.  Id. at ¶¶ 61, 64.[1]  After filing its opposition, KME proposed a global co-existence agreement to confirm HME's right to use the HME mark only for the HME business.  Id. at ¶ 62.  According to the FAC, although the parties failed to resolve their dispute, KME's draft agreement provided evidence that Hailiang had reason to believe—and to rely on its belief—that KME had no objection to Hailiang's use or registration of the HME mark as long as it was used only for the HME business.  Id. at ¶ 63.

In an email dated November 19, 2019, KME's in-house paralegal wrote:

> In the purchase agreement, Hailiang committed to choosing a company name that was significantly different from KME. It is more than doubtful whether "HME" meets these requirements. A clear global demarcation of the areas of application is therefore absolutely necessary.

---

[1] The FAC does not explain the outcome of Hailiang's EUIPO application; however, in its memorandum in support of the Motion to Dismiss, KME explains that "KME opposed that application and prevailed."  [Dkt. No. 38] at 8.  Moreover, in its Answer to the Complaint, KME explains that the EUIPO concluded that "the HME Mark for which Hailiang sought registration in the European Union—for similar goods in the United States—was confusingly similar to KME's Mark."  [Dkt. No. 16] at 22-23.

Id. at ¶ 65. The FAC alleges that this email supports its claim that "there are numerous affirmative acts and statements by KME that KME acquiesced to the use and registration of HME for the HME [b]usiness." Id. at ¶ 67.

On April 8, 2020, Hailiang filed Application No. 88863480 with the United States Patent and Trademark Office ("USPTO") to register the mark "HME", based upon its claim of first use in commerce since at least as early as April 12, 2019 for each class of goods listed in the application, which displayed the following mark:



Id. at ¶ 119.[2] The application sought use of the mark for the following class of goods:

- Class 6: Alloys of common metal; Branching pipes of metal; Brass, unwrought or semi-wrought; Cable junction sleeves of metal; Copper, unwrought or semi-wrought; Ducts of metal for ventilating and air-conditioning installations; Molybdenum bonded with other metals in the form of sheets, plates and foils for further manufacture; Poles of metal; Water-pipes of metal; Metal rods for brazing and welding;

- Class 11: Air-conditioning, air cooling and ventilation apparatus and instruments; Cooling installations for water; Industrial-water purifying apparatus; Ionization apparatus for the treatment of air; Pipes being parts of sanitary facilities; Regulating accessories for water supply, namely, metered valves; Air cooling apparatus;

- Class 19: Brackets, not of metal, for building; Building glass; Gutter pipes, not of metal; Plastic water conduits for roofs and balconies; Rigid pipes, not of metal; Rigid pipes, not of metal, for building; Water-pipes, not of metal; Building material, namely, plastic webbing material used to reinforce bituminous waterproofing sheets; Building materials, namely, fire and blast-resistant doors

---

[2] Hailiang's application for the HME mark with the USPTO was "not limited to any particular color," seemingly unlike its application for the HME mark with the EUIPO. See [Dkt. No. 27-1] at 22; [Dkt. No. 27] at ¶ 38.

> comprised primarily of reinforced cement and also including steel
> elements; Non-metal air conditioning ducts; Non-metallic drainage
> pipes; Non-metallic rigid pipes for construction purposes.

Id. The trademark examiner approved Hailiang's application, without citing to any KME mark

as a bar to registration.  Id. at ¶ 121.

KME opposed registration of Hailiang's application (Opposition No. 91267675) in the

TTAB alleging priority and likelihood of confusion under Section 2(d) of the Lanham Act, and

false suggestion of a connection with KME under Section 2(a) of the Lanham Act, 15 U.S.C.

§§ 1052 (d) and (a), based on:

> (1) prior common law rights in "various trademarks including the
> term KME together with other word and/or design elements" in
> association with "a wide variety of metal and metal alloy products
> and related services";
>
> (2) registration of the mark KME (in typed format) for various metal
> goods and related services, including "semi-finished products of
> metal . . . ; sheets, strips, profiled panels, rails all made of copper for
> use with windows, . . . wall claddings and roof coverings; tubes of
> metal for conducting gaseous, vaporous and or liquid media for use
> in air conditioning and refrigeration units" in International Class 6,
> and "[i]nstallation, maintenance, and repair of casting molds for the
> continuous casting of metals and metal alloys and equipment for
> industrial and commercial plants in the fields of energy recovery and
> power conducting," in International Class 37;[3] and
>
> (3) Opposer's application to register the mark KME and design,
> displayed as  for various goods and services
> in International Classes 6, 7, 9, 11, 17, 37, 40 and 42, including
> "pipes and tubes of metal" in Class 6, "air ventilating apparatus" in
> Class 11, and "constructing engineering services of sanitary and
> heating installations, roof coverings, façade claddings and roof
> drainage systems" in Class 42.[4]

---

[3] KME's Reg. No. 2325245 ('245 registration) issued on March 7, 2000, and Reg. No. 2394599 ('599 registration) issued on October 17, 2000.  Both registrations have been renewed.

[4] KME's Application Serial No. 79277605 was filed on July 12, 2019 under Section 66(a) of the Trademark Act, 15 U.S.C. § 1141f(a), seeking an extension of protection in the United States for International Reg. No. 1511843, issued on the same date, with a claimed priority date of April 9,

[Dkt. No. 27-1] at 5-6.  The opposition was litigated before the TTAB, which reversed the

examiner's decision and sustained KME's opposition under Section 2(d) of the Lanham Act

(priority and likelihood of confusion).  The TTAB declined to rule on KME's Section 2(a)

objection (as not needed in view of its ruling under Section 2(d)) and refused registration of

Hailiang's application by an Order dated September 29, 2023.  [Dkt. No. 27] at ¶ 133.

     According to the FAC, the TTAB was not provided with the full record of relevant

evidence that Hailiang has now been able to begin assembling.  As such, Hailiang argues that the

TTAB's decision was based on an incomplete and largely irrelevant record which Hailiang will

rectify in this litigation through a de novo trial.  Id. at ¶ 125.  Specifically, the FAC claims that

the "scant record was limited to some notices of reliance in written discovery responses and

written testimony of employees of KME and Hailiang," and there was no cross examination of

any witnesses.  Id. at ¶ 126.  Moreover, "KME left out all reference to the substantial evidence

that KME approved and/or acquiesced to the use of HME for the HME [b]usiness."  Id. at ¶ 128.

     In November 2023, KME sent Hailiang cease-and-desist letters demanding that Hailiang

immediately cease and desist using the HME mark, relying on the TTAB decision to support its

demands.  Id. at ¶ 161.

## B. Procedural History

     Pursuant to 15 U.S.C. § 1071, Hailiang had sixty days from the date of the TTAB

decision, until November 28, 2023, to seek review of that decision.[5]  Hailiang timely filed its

---

2019.  KME's Reg. No. 6926711 ('711 registration) issued from this application on December
20, 2022.

[5] In seeking review of the TTAB decision, Hailiang had two options under 15 U.S.C. § 1071—it
could appeal the decision to the United States Court of Appeals for the Federal Circuit pursuant
to § 1071(a), which allows for review of the administrative record established before the TTAB,

original three-count Complaint in this Court on November 27, 2023, which sought a declaration

that there was no likelihood of confusion and an order overturning the TTAB's decision (Count

I); an order requiring the Director of Patent and Trademark to register the HME mark (Count II);

and a declaration of non-infringement (Count III). [Dkt. No. 1]. KME filed an Answer to the

original Complaint on March 13, 2024 and asserted a counterclaim for trademark infringement

under 15 U.S.C. § 1114, alleging that:

> KME has priority in the KME Marks and Registrations because it
> has been consistently using at least its standard-character marks to
> sell its copper and metal products in the United States since at least
> as early as 1996. Further, the '245 Registration was filed on
> February 19, 1998 and registered on March 7, 2000; the '599
> Registration was filed on February 24, 1998 and registered on
> October 17, 2000; and the '711 Registration was internationally
> registered on July 12, 2019, with a Section 67 priority claim of April
> 9, 2019.

[Dkt. No. 16] at 24.

On March 29, 2024, Hailiang filed the seven-count FAC at issue, which contained the

same three counts as in the original Complaint, and added the following four new counts, all of

which are directed at cancelling various KME trademarks: cancellation of HME's '599 registered

trademark (Count IV); cancellation of HME's '711 and '531 registered trademarks for fraud on

the USPTO (Count V); partial cancellation of HME's '711 and '531 registered trademarks for

abandonment (Count VI); and full or partial cancellation of HME's '245 registered trademark for

abandonment (Count VII). See [Dkt. No. 27].

On April 3, 2024, Hailiang answered the counterclaim, raising twelve affirmative

defenses of which six defenses are the subjects of KME's Motion to Dismiss:

---

or file a civil action in federal district court pursuant to § 1071(b), which allows for a de novo
proceeding.

**First Affirmative Defense**: KME's claims are barred by laches. KME has waited since 2019 to bring any kind of court challenge to HME's use of HME's mark, all the while knowing that HME was using the mark. HME has been prejudiced by KME's conduct in now suddenly attempting to preclude HME from using the mark after KME's prolonged lack of diligence.

**Seventh Affirmative Defense**: KME's claims are barred because its pleaded registrations are subject to cancellation for nonuse and/or abandonment.

**Eighth Affirmative Defense**: KME's claims are barred because its pleaded registrations are subject to cancellation for fraud in the procurement and/or maintenance of those registrations. KME knowingly made false, material statements to the World Intellectual Property Organization and/or the United States Patent and Trademark Office ("USPTO") with the intent to deceive the USPTO, and upon which the USPTO relied in issuing or maintaining KME's registrations.

**Ninth Affirmative Defense**: KME's claims are time barred under German law, (including statute of limitations) which is the choice of law established by the Asset Purchase Agreement.

**Tenth Affirmative Defense**: KME's claims are barred by abandonment of KME's registered and common-law rights.

**Twelfth Affirmative Defense**: KME's claims are barred by unclean hands because KME is bringing this lawsuit after clearly having acquiesced to HME's use of its marks, upon information and belief for the purpose of gaining leverage in unrelated business negotiations. Moreover, documents signed by KME's CEO Ulrich Becker and surrounding circumstances as to his and KME's acquiescence of HME's use of its marks belies his testimony before the Trademark Trial and Appeal Board that he believed the marks were confusingly similar. This suggests he intentionally misled the Trademark Trial and Appeal Board to obtain a desired result. Furthermore, KME improperly sent a cease-and-desist letter asserting that the TTAB opinion was final and binding when in fact the appeal deadline had not yet passed.

[Dkt. No. 35] at 9-11.

On April 12, 2024, KME filed the instant Motion to Dismiss, arguing that Hailiang attempts to assert "for the first time" claims that were compulsory counterclaims before the

TTAB and fails to satisfy federal pleading requirements; includes numerous paragraphs in the
FAC that directly relate to the parties' settlement discussions during the EUIPO proceeding in
"blatant violation of Federal Rule of Evidence 408"; and, in answering KME's counterclaim for
infringement, includes affirmative defenses based on insufficient grounds. [Dkt. No. 38] at 9.
The Motion to Dismiss has been fully briefed, [Dkt. Nos. 40, 43], and oral argument has been
held.

II

**A. <u>Standard of Review</u>**

<u>1. Fed. R. Civ. P. 12(b)(1)</u>

A claim is subject to dismissal under Rule 12(b)(1) when the court lacks jurisdiction over
the claim's subject matter. When a defendant attacks a claim for failing to allege "facts upon
which subject matter jurisdiction may be based," the facts alleged by the plaintiff are assumed to
be true. <u>Pro-Football, Inc. v. Blackhorse</u>, 62 F. Supp. 3d 498, 502 (E.D. Va. 2014). "In
considering a 12(b)(1) motion to dismiss, the burden is on the plaintiff to prove that federal
subject matter jurisdiction is proper." <u>Id.</u> (citing <u>United States v. Hays</u>, 515 U.S. 737, 743
(1995)).

<u>2. Fed. R. Civ. P. 12(b)(6)</u>

To dismiss a claim under Rule 12(b)(6), a court must find that a "plaintiff's allegations
fail to state a claim upon which relief can be granted." <u>Abdelhamid v. Sec'y of the Navy</u>, 525 F.
Supp. 3d 671, 681 (E.D. Va. 2021) (quoting <u>Adams v. NaphCare, Inc.</u>, 244 F. Supp. 3d 546, 548
(E.D. Va. 2017)). At the motion to dismiss stage, "the court accepts facts alleged in the
complaint as true and views those facts in the light most favorable to the plaintiff." <u>Sturgill v.
Norfolk S. Ry. Co.</u>, 391 F. Supp. 3d 598, 602 (E.D. Va. 2019). To survive a Rule 12(b)(6)
motion, a complaint's factual allegations must be more than speculative and must "state a claim

10

to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  In

addition, it is not enough for a complaint simply to provide "labels and conclusions" or "a

formulaic recitation of the elements of a cause of action."  Id. at 555.

### 3. Fed. R. Civ. P. 12(f)

Rule 12(f) provides that a court may strike an "insufficient defense" or any "redundant,

immaterial, impertinent, or scandalous matter" from a pleading either sua sponte or upon a

motion.  Further, "a defense that might confuse the issues in the case and would not, under the

facts alleged, constitute a valid defense to the action can and should be deleted."  Waste Mgmt.

Holdings, Inc. v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001).

A court may strike an insufficient defense if "the challenged allegations are 'so unrelated

to the plaintiff's claims as to be unworthy of any consideration as a defense and [] their presence

in the pleading throughout the proceeding will be prejudicial to the moving party.'"  Grant v.

Bank of Am., N.A., 2014 WL 792119, at *2 (E.D. Va. Feb. 25, 2014) (quoting 5C Charles Alan

Wright & Arthur R. Miller, Federal Practice & Procedure § 1380 (2d ed. 1990)).  Even where

prejudice does not exist, a court may strike legally insufficient defenses "when there is no bona

fide issue of fact or law."  Clark v. Milam, 152 F.R.D. 66, 70 (S.D. W. Va. 1993).

### B. Counts V and VI and Tenth Affirmative Defense—Jurisdiction

In Counts V and VI, Hailiang seeks cancellation of KME's '531 and '711 registrations, in

whole or in part, because KME has purportedly fraudulently procured or abandoned those

registrations.  [Dkt. No. 27] at ¶¶ 268-83.  Hailiang's Tenth Affirmative Defense rests in part on

the same claims.  [Dkt. No. 35] at 11 ("KME's claims are barred by abandonment of KME's

registered and common-law rights").  In its Motion to Dismiss, KME argues that the Court lacks

subject matter jurisdiction to address the '531 registration issue because Hailiang fails to allege

any actual case or controversy related to that registration and therefore lacks standing.  [Dkt. No.

38] at 15.  In opposition, Hailiang argues that the threshold for Article III standing is "very low" and that it has plausibly alleged that it will be damaged as a result of that registration.  [Dkt. No. 40] at 9-10.

Under Article III of the Constitution, courts have the power to decide only "Cases" or "Controversies."  U.S. Const. art. III § 2.  The Supreme Court of the United States "ha[s] long understood that constitutional phrase to require that a case embody a genuine, live dispute between adverse parties, thereby preventing the federal courts from issuing advisory opinions." Carney v. Adams, 592 U.S. 53, 58 (2020).  "The doctrine of standing implements this requirement by insisting that a litigant 'prove that he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision.'"  Id.  (quoting Hollingsworth v. Perry, 570 U.S. 693, 704 (2013)). Accordingly, for a plaintiff to challenge the validity of a trademark registration that has not been asserted against it, it must show how the USPTO's decision to register the mark "invaded [the plaintiff's] legally protected interest."  Alfwear, Inc. v. IBKUL Corp., 672 F. Supp. 3d 1174, 1184 (D. Utah 2023).

The FAC has failed to allege any actual case or controversy related to the '531 registration because the only registrations cited in KME's Notice of Opposition to Hailiang's application before the TTAB were KME's '599 and '245 registrations, and its application that has since matured into the '711 registration.  [Dkt. No. 27] at ¶¶ 187-88; see supra at 6-7.  The sole allegation in the FAC regarding the '531 registration is that "[t]he continued existence of certain non-pleaded KME registrations places [Hailiang] at continued risk for its own use and registration of its own marks."  [Dkt. No. 27] at ¶ 237.  In other words, Hailiang is concerned that at some point in the future KME may assert a different registration in a different action.

12

Fear of undefined future litigation does not rise to the level of either a case or controversy.  See, e.g., Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 593 n.12 (4th Cir. 2004) (explaining that when "the defendant had not taken any action, even of a preliminary nature, against the plaintiff, and the defendant had not indicated that it intended to take any future legal action against the plaintiff" a case or controversy "was not present").

Hailiang tries to avoid dismissal by citing to the Lanham Act, which provides that "[a]ny person who believes that he would be damaged by the registration of a mark" on the principal register may file an opposition or cancellation of that mark, 15 U.S.C. § 1063(a); however, statutory standing is irrelevant unless and until Hailiang first establishes a justiciable claim under Article III.  Hailiang cannot supersede constitutional requirements by using the Lanham Act's standard for stating a statutory violation.  See Spokeo, Inc. v. Robins, 578 U.S. 330, 338-42 (2016), revised (May 24, 2016) ("Article III standing requires a concrete injury even in the context of a statutory violation.  For that reason, Robins could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III."); Griffin v. Dep't of Lab. Fed. Credit Union, 912 F.3d 649, 657 (4th Cir. 2019) ("But to ignore the requirement of an injury in fact in this case would be to transform constitutional standing into a null item.").

Hailing's purported fear that "KME could later try to sue again on the '531 registration as to some future use of HME," [Dkt. No. 40] at 12, is exactly the type of undefined fear of hypothetical future litigation that this Court and the United States Court of Appeals for the Fourth Circuit have held does not constitute a case or controversy and would amount to the Court issuing an advisory opinion.  See N. Jefferson Square Assocs., L.P. v. Virginia Hous. Dev. Auth., 94 F. Supp. 2d 709, 716 (E.D. Va. 2000), aff'd, 32 F. App'x 684 (4th Cir. 2002) ("The absence

of any action by HUD, even of the most preliminary of nature, renders this matter into the realm

of future possibilities that this Court cannot adjudicate."). Simply put, "[a] claim is not ripe for

adjudication if it," like here, "rests upon contingent future events that may not occur as

anticipated, or indeed may not occur at all." See Hanover Ins. Co. v. C. David Venture Mgmt.,

LLC, 2022 WL 3924264, at *3 (E.D. Va. Aug. 30, 2022). Accordingly, because Hailiang has

not, and cannot, identify any injury caused by the '531 registration, Hailiang has failed to allege

any actual case or controversy existing between the parties with respect to the '531 registration.[6]

Therefore, those parts of Counts V and VI that relate to the '531 registration will be dismissed

and Hailiang's Tenth Affirmative Defense as it relates to the '531 registration will be stricken for

lack of subject matter jurisdiction.

### C. Count V and Eighth Affirmative Defense—Compulsory Counterclaim

In Count V, Hailiang alleges that the '531 and '711 registrations were procured by fraud,

[Dkt. No. 27], and in its Eighth Affirmative Defense to KME's counterclaim, it alleges that

KME's infringement counterclaim is barred because its registrations are subject to cancellation

for fraud in their procurement or maintenance. [Dkt. No. 35] at 10.[7] KME argues that the Court

should dismiss this claim because Hailiang has waived its right to challenge the validity of the

---

[6] Although Hailiang correctly argues that prospective harm may support Article III standing in
some instances, [Dkt. No. 40] at 10, Hailiang's claim that it has Article III standing with respect
to the '531 registration because it has been "threatened with an infringement suit" in KME's
cease-and-desist letters for using KME's marks in general, is misleading. Contrary to Hailiang's
claim, KME's cease-and-desist letters do not assert a vague threat of litigation based on general
KME registrations; rather, the letters refer exclusively to KME's right to enforce the TTAB's
favorable judgment in an infringement suit, if necessary. [Dkt. No. 1-2] (explaining that the
TTAB's decision "has a preclusive effect in district court litigation" if "KME were to file suit for
trademark infringement").

[7] Because claims involving the '531 registration are not properly before the Court, see supra at
11-14, any further arguments based on the '531 registration will not be considered in this
Memorandum Opinion.

'711 registration by not raising the issue during the TTAB proceeding. [Dkt. No. 38] at 18.  In

opposition, Hailiang argues that because its allegation of fraud would have been a permissive

counterclaim before the TTAB, and not a compulsory counterclaim, it is not precluded from

bringing a claim for fraud in this litigation.  [Dkt. No. 40] at 16.

      Both parties agree that Hailiang did not raise a fraud claim against the '711 registration

during the TTAB proceeding; however, they disagree about whether such fraud allegation would

have been a compulsory or permissive counterclaim during the TTAB proceeding.  Under the

Trademark Rules, "[a] defense attacking the validity of any one or more of the registrations

pleaded in the opposition shall be a compulsory counterclaim if grounds for such counterclaim

exist at the time when the answer is filed"; however, "[i]f grounds for a counterclaim are learned

during the course of the opposition proceeding, the counterclaim shall be pleaded promptly after

the grounds therefor are learned."  37 C.F.R. § 2.106(b)(3)(i).  Notably, "claims that are

compulsory counterclaims under Trademark Rule 2.106(2)(i), [] must be raised before the TTAB

or they are barred."  Zawod v. SIA Baltmark Inv., 2013 WL 6189233, at *8 (E.D. Va. Nov. 26,

2013).  On the other hand, an opposition to a pending application does not qualify as a

compulsory counterclaim because the TTAB does not permit "[s]uch a hypothetical pleading."

See Pyttronic Indus. Inc. v. Terk Tech. Corp., 16 U.S.P.Q. 2d 2055, 2056 n.2 (T.T.A.B. 1990).

      Hailiang is not barred from alleging fraud against KME's '711 registration.  KME

asserted the application that has since matured into the '711 registration in its Notice of

Opposition before the TTAB; however, the '711 application was merely pending when Hailiang

filed its Answer in the TTAB proceeding on March 11, 2021.  [Dkt. No. 27] at ¶¶ 214.  Indeed,

the '711 registration was not approved until December 20, 2022, two months after the TTAB

proceeding had been fully briefed and had been submitted on October 21, 2022 to the TTAB for

a final decision. [Dkt. No. 40] at 15.  Because the '711 registration was merely pending when the case was submitted for consideration, an attack on the '711 registration would not have qualified as a compulsory counterclaim.[8]  Accordingly, KME's motion to dismiss this portion of Count V and to strike Hailiang's Eighth Affirmative Defense will be denied.

## D.  Count V and Eighth Affirmative Defense—Rule 9(b)

KME also argues that the Court should dismiss Count V and strike Hailiang's Eighth Affirmative Defense because the FAC "is devoid of the specific facts required to allege fraud" regarding the '711 registration "under Rule 9(b)'s heightened pleading standard." [Dkt. No. 38] at 20.  Hailiang responds that it has properly alleged that KME knowingly made a material misrepresentation of fact upon which the USPTO relied when it issued KME's '711 registration. [Dkt. No. 40] at 17.

To allege a plausible fraud claim, a complaint must "state with particularity the circumstances constituting fraud. . . ." Fed. R. Civ. P. 9(b).  "[T]he 'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'"  Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir.

---

[8] Although KME correctly argues that the TTAB generally allows amendment to an Answer to add compulsory counterclaims, none of those cases involved an amendment after the case had been submitted to the TTAB for a final decision.  Raising a new cause of action to cancel the '711 registration would have required petitioning the TTAB to reopen the record and authorize new discovery.  This fact stands in direct contrast to KME's cited cases, which merely show the TTAB granting a party's request to amend a pleading.  See Am. Optical Corp. v. Am. Olean Title Co., 168 U.S.P.Q. 471 (T.T.A.B. 1971) (granting applicant's motion to amend its answer after the close of opposer's testimony period); Reflange Inc. v. R-Con Int'l, 17 U.S.P.Q. 2d 1125 (T.T.A.B. 1990) (permitting amended answer after trial to add an affirmative defense); Lab's du Dr. N.G. Payot Establissement v. Southwestern Classics Collection Ltd., 3 U.S.P.Q. 2d 1600 (T.T.A.B. 1987) (granting motion to amend at time of final briefing).

1999).  Indeed, Hailiang must allege with particularity that (1) an individual at KME made a

material misrepresentation of fact to the USPTO in connection with the '711 registration; (2) the

individual had actual knowledge or belief that the representation was false; (3) the individual had

intent to deceive the USPTO in making the representation; (4) the USPTO actually relied on

such representation; and (5) Hailiang was injured as a result of that reliance.  See id.  These

requirements apply equally to Hailiang's affirmative defense based on allegations of fraud.  See

Exergen Corp. v. Wal-Mart Stores, Inc., 575 F.3d 1312, 1326-27 (Fed. Cir. 2009).

      The FAC plausibly alleges fraud as to the '711 registration.  Specifically, in support of its

claims of fraud, the FAC points to KME (1) providing a long list of goods and services in the

application; (2) signing a declaration of use for goods such as "Blacksmithing" that is not

facially credible; (3) including services in the application that KME could not have plans to

provide in the United States, namely, "[i]nstallation, assembly, maintenance and repair of

sanitary and heating installations," because KME has only a sales office, not a service

department in the United States; and (4) including goods in the application that comprise lines of

business that KME sold in their entirety to plaintiff much earlier, for example, "pipes and tubes

of copper."  See [Dkt. No. 27] at 37.  These facts are detailed and not conclusory.

      KME argues that the allegations in the FAC do not give rise to an inference of intent to

defraud because the FAC recognizes that "it is common that foreign registrants misunderstand"

registration applications; however, as Hailiang correctly explains, "[t]here is a difference

between proving and pleading a claim of fraud on the USPTO." [Dkt. No. 40] at 18.  Indeed,

intent to deceive may be alleged generally at the pleading stage so long as such general

allegation is "plausible" and "flows logically from the facts alleged." Exergen Corp. v. Wal-

Mart Stores, Inc., 575 F.3d 1312, 1328-29 & n.5 (Fed. Cir. 2009).  Accordingly, because

17

Hailiang has set forth sufficient facts to allege that KME knew that it had no intent to use the '711 registration mark, it has satisfied the plausibility threshold and Count V and Hailiang's Eighth Affirmative Defense as they relate to the '711 registration will go forward.

### E. Counts IV, VI, and VII, and Seventh and Tenth Affirmative Defenses— Abandonment

Hailiang seeks cancellation of KME's '599 registration in its entirety (Count IV), portions of the '711 registration (Count VI), and some or all of the '245 registration (Count VII) due to alleged abandonment of those marks with respect to specific goods. These allegations are echoed in the Seventh and Tenth Affirmative Defenses—both of which allege that KME's infringement claim is barred by abandonment. [Dkt. No. 35] at 10-11. KME argues that the FAC fails to allege a plausible claim of abandonment as to any of KME's registrations. [Dkt. No. 38] at 23. Hailiang responds that it has more than adequately alleged abandonment of the KME marks as to a range of goods and services. [Dkt. No. 40] at 21.

To state a claim for cancellation based on abandonment, the FAC must allege facts demonstrating that the trademark owner (1) has ceased using the mark in commerce, and (2) does not intend to resume that use in the reasonably foreseeable future. Advance Mag. Publishers, Inc. v. Leach, 466 F. Supp. 2d 628, 639-40 (D. Md. 2006). Although an allegation of non-use for three consecutive years can constitute a prima facie case of abandonment creating a presumption of intent not to resume use, see id., Hailiang does not allege such a three-year period here; rather, Hailiang contends that KME rebranded a portion of its business that sold special engineered products, thereby "affirmatively abandon[ing] the KME brand for those goods." [Dkt. No. 27] at 14. Hailiang further contends that KME abandoned use of its marks on the goods and services covered in the line of business sold to Hailiang in 2019.

18

Hailiang bases its abandonment theory on three events: 1) KME's sale of its brass business and some of its copper tubing business to Hailiang in 2019; 2) the publicly announced decision by a component of KME, "KME Special Products & Solutions," to rebrand its business as "Cunova"; and 3) KME's submission of specimens to the USPTO to maintain its marks. As an initial matter, a claim of abandonment based on the 2019 sale of KME's business had to have been raised as a compulsory counterclaim in the 2021 opposition proceeding before the TTAB. Zawod v. SIA Baltmark Invest, 2013 WL 6189233, at *8-9 (E.D. Va. Nov. 26, 2013) (explaining that claims of abandonment are compulsory counterclaims that must be brought before the TTAB and any "contrary reading would vitiate the compulsory counterclaim rule"). District courts do not pass upon compulsory counterclaims "that were not raised before the TTAB," id., and because Hailiang did not raise abandonment based on the 2019 sale of portions of KME's business during the 2021 TTAB proceeding, it cannot now bring a claim of abandonment.[9]

Moreover, although a related company's use of a mark inures to the benefit of the trademark owner, a related company's abandonment of a mark does not constitute abandonment by the trademark owner. 15 U.S.C. § 1055 ("Where a registered mark . . . is or may be used legitimately by related companies, such use shall inure to the benefit of the registrant or applicant for registration, and such use shall not affect the validity of such mark or of its registration. . . ."). Accordingly, that KME Special Products has rebranded to Cunova does not support a plausible claim that KME has abandoned its registrations. See Cumulus Media, Inc. v. Clear Channel

---

[9] Hailiang argues in its sur-reply that "the issue of whether a mark is abandoned is temporal," and as such, an abandonment claim could not have been brought during the TTAB proceeding in 2021. This argument is unpersuasive. Hailiang has claimed that because KME "stopped using KME on those lines of business" that it sold to Hailiang in 2019, KME abandoned its marks on those lines of business; however, this would have been equally as clear in 2021 during the TTAB proceedings. Accordingly, because Hailiang could have alleged, but failed to allege, abandonment in the TTAB proceeding, its abandonment claim relating to the 2019 sale is barred.

Comme'ns, Inc., 304 F.3d 1167, 1178 n.17 (11th Cir. 2002) (noting that announcement of a company's name change "does not alone serve to make a prima facie showing of abandonment," instead the party alleging abandonment "must also introduce evidence of nonuse").

Hailiang's final argument that specimens submitted to maintain the '599 and '245 registrations demonstrate that KME partially or totally abandoned its marks also fails. Those specimens contained images from a website that has since been rebranded to "Cunova" and a website that Hailiang cannot now access. To renew a trademark registration under Section 8 of the Lanham Act, the registrant must submit an affidavit that (1) states the mark is in use in commerce, (2) identifies the goods with which it is used, (3) provides a specimen (i.e., example) showing evidence of such use, and (4) is accompanied by the required fee. See 15 U.S.C. § 1058. Notably, the USPTO does not require the registrant to submit a specimen as to each and every good with which the mark is used, or each and every way the mark is used with respect to those goods. Rather, the registrant is only required to provide "one specimen showing how the mark is in use in commerce for each class in the registration," unless the USPTO specifically requests additional specimens. See 37 C.F.R. § 2.161. The FAC alleges no basis for finding that the specimens submitted in connection with maintaining the '245 and '599 registrations constitute the only way the KME registrations were used with the covered goods. Therefore, even if the specimens are no longer associated with the registrations, this allegation does not set out a plausible claim of non-use of any of the KME registrations. Accordingly, Hailiang has failed to state a claim of abandonment and, as such, Counts IV, VI, and VII will be dismissed, and Hailiang's Seventh and Tenth Affirmative Defenses will be stricken.

**F.  Counts I and III, Paragraphs 166-174 and Prayer for Relief Section (d) of the FAC,**

**and First and Ninth Affirmative Defenses—Timing**

a.  Laches

Both Counts I and III include allegations that the doctrine of laches precludes KME's

infringement counterclaim.[10]  In addition, Hailiang's First Affirmative Defense alleges that

"KME's claims are barred by laches" because "KME has waited since 2019 to bring any kind of

court challenge to [Hailiang's] use of" the mark and that Hailiang has been prejudiced by this

delay.  [Dkt. No. 35] at 9.  KME argues that the FAC fails to allege any facts that would support

application of the laches doctrine.  [Dkt. No. 38] at 29.  Hailiang responds that when KME filed

its opposition in the TTAB in February 2021, there had already been two years of delay in

asserting any rights as to the lines of business purchased from KME, and that this delay supports

its laches defense.  [Dkt. No. 40] at 26.

"Laches may be applied by a court to bar a suit in equity that has been brought so long

after the cause of action accrued that the court finds that bringing the action is unreasonable and

unjust."  Lyons P'ship, L.P. v. Morris Costumes, Inc., 243 F.3d 789, 798 (4th Cir. 2001).  "When

federal courts, in the exercise of their equitable power, consider laches, they are guided by the

limitations period that they would borrow for actions at law and presume that if an equitable

claim is brought within the limitations period, it will not be barred by laches."  Id. at 799.  To

establish a laches defense, an accused infringer must show that (1) the trademark owner "lacked

---

[10] Although Hailiang does not explicitly identify the laches doctrine as a basis for its declaratory judgment request in Counts I or III, it alleges facts it believes support a laches finding in a section of the FAC's factual background entitled "Bases for Declaratory Judgment of Non-Infringement and Overturning the TTAB Decision."  [Dkt. No. 27] at ¶¶ 27-32.  Therefore, the Court will construe paragraph 249 of Count I and paragraph 260 of Count III as raising the laches defense.

diligence in asserting its claims" because it "delayed inexcusably or unreasonably in filing suit,"

and (2) the accused infringer was prejudiced by the delay. <u>Plumbers & Steamfitters Union Loc.</u>

<u>No. 10 v. Waters</u>, 451 F. Supp. 3d 543, 551 (E.D. Va. 2020).

      Hailiang fails to identify any basis for finding that the laches doctrine precludes KME's

counterclaim for infringement.  Specifically, Hailiang's only allegation supporting unreasonable

delay is that KME opposed Hailiang's application in the United States for the HME mark but did

not "object to the use of HME as a trademark or trade name in the United States for the HME

[b]usiness, or indeed for any use." [Dkt. No. 27] at ¶¶ 27-31.  Given that KME opposed the

HME mark before both the EUIPO and the USPTO, Hailiang has not plausibly alleged that KME

lacked diligence in asserting its claims.  Indeed, courts within the Fourth Circuit have repeatedly

found that "pursuing an opposition in the USPTO can excuse a delay in filing suit on a Lanham

Act claim," to the extent such a delay can be said to exist. <u>Dewberry Engineers, Inc. v.</u>

<u>Dewberry Grp., Inc.</u>, 2022 WL 1439826, at *8 (E.D. Va. Mar. 2, 2022), <u>aff'd</u>, 77 F.4th 265 (4th

Cir. 2023); <u>Variety Stores, Inc. v. Wal-Mart Stores, Inc.</u>, 2016 WL 6906704, at *3 (E.D.N.C.

Nov. 22, 2016) (finding 2.5 year delay in suit not unreasonable for purposes of awarding

monetary relief under the Lanham Act given plaintiff's PTO opposition to infringing

applications), <u>vacated on other grounds</u>, 888 F.3d 651 (4th Cir. 2018); <u>Exclaim Mktg., LLC v.</u>

<u>DirecTV, LLC</u>, 674 F. App'x 250, 257-58 (4th Cir. 2016) (affirming enhanced profits award

despite four-year delay in filing suit).

      Given that a trademark owner who succeeds before the TTAB may rely on that finding in

a later infringement action, <u>B & B Hardware, Inc. v. Hargis Industries, Inc.</u>, 575 U.S. 138, 160

(2015), KME waiting for an opposition proceeding to conclude before filing a lawsuit in district

court was appropriate.  Accordingly, because the FAC has failed to allege an unreasonable delay

22

by KME, the portions of Counts I and III that are based on the doctrine of laches will be dismissed, and Hailiang's First Affirmative Defense will be stricken.

  b. <u>The APA's Limitations Provision</u>

   The FAC's Counts I and III, paragraphs 166-74, and Prayer for Relief section (d) allege that KME's infringement counterclaim is time barred because Section 16 of the APA contains a contractual statute of limitations covering any disputes between the parties.  See [Dkt. No. 27] at ¶¶ 166-74, Prayer for Relief (d).  KME argues that Section 16 of the APA applies only to claims against KME for breaches of its warranties, and as such, the limitations provision is inapplicable. [Dkt. No. 38] at 32.  Hailiang fails to respond to his argument in its opposition.

   As an initial matter, Hailiang's failure to address KME's claim "results in a concession of that claim," <u>United Supreme Council v. United Supreme Council</u>, 329 F. Supp. 3d 283, 292 (E.D. Va. 2018).  Even looking beyond this concession, the limitations provision is inapplicable. Section 16 of the APA states that "claims of [Hailiang] in connection with any Breach of [KME's] Warranty under this Agreement shall become time-barred as follows: . . . 16.6.3 All other claims for Breach shall become time-barred eighteen (18) months after the Closing Date." [Dkt. No. 38-1] at 51-52.  Here, KME's counterclaim is not one for breach of warranty; rather, KME is alleging infringement of its trademarks as a counterclaim against Hailiang, a claim which clearly falls outside the scope of Section 16.  Accordingly, the portions of Counts I and III that are based on the APA's limitations provision will be dismissed, and paragraphs 166-74 and Prayer for Relief section (d) in the FAC will be stricken.

  c. <u>The APA's German Law Provision</u>

   The Ninth Affirmative Defense alleges that "KME's claims are time barred under German law, (including its statute of limitations) which is the choice of law established by the Asset Purchase Agreement."  [Dkt. No. 35] at 11.  KME argues that Hailiang's Ninth

Affirmative Defense should be stricken because neither Hailiang's FAC nor the Ninth

Affirmative Defense identify any claim to which German law would apply. [Dkt. No. 38] at 32.

In opposition, Hailiang argues that German law is the choice of law established by the APA and

should apply in this case. [Dkt. No. 40] at 29.

     The only provision of the APA relating to choice of law is Section 23.10, which provides

that disputes as to "any contractual rights and obligations arising out of or in connection [with

the APA] and its consummation, including disputes about its validity," as well as the parties'

"non-contractual rights and obligations in connection with this Agreement" shall be governed by

German law. [Dkt. No. 38-1] at § 23.10.1-23.10.2. KME's counterclaim does not involve

violations of the APA. Instead, it arises from Hailiang's adoption and use of the HME mark in

the United States and the TTAB's order finding a likelihood of confusion between the parties'

marks for the same classes of goods. Because neither the APA nor the parties' obligations under

the APA provides the basis for KME's infringement claim, and because KME's counterclaim

simply alleges infringement of its US registered trademarks, which are not even mentioned in the

APA, German law does not apply to KME's infringement counterclaim. Accordingly,

Hailiang's Ninth Affirmative Defense will be stricken.

### G. Paragraphs 55-60 and 62-70 of the FAC—Fed. R. Evid. 408

     KME also seeks to strike paragraphs within the FAC that discuss or quote confidential

settlement discussions in a background section titled "Confirmation/Admissions of Acquiescence

of the Use of HME by KME Trademark Counsel." KME argues that inclusion of these

discussions violates Fed. R. Evid. 408, which prohibits the admission of "a statement made

during compromise negotiations" either to "prove or disprove the validity or amount of a

disputed claim. . . ." [Dkt. No. 38] at 33; Fed. R. Evid. 408. In opposition, Hailiang correctly

argues that Rule 408 does not prohibit all settlement-related conversations, including settlement

conversations for the purpose of supporting a claim for estoppel by acquiescence. [Dkt. No. 40] at 30. Indeed, in <u>PRL USA Holdings Inc. v. US Polo Ass'n Inc.</u>, which involved a trademark dispute, the Second Circuit held that "it seems clear that" Rule 408's "firm prohibition should not apply to the affirmative defense of estoppel by acquiescence." 520 F. 3d 109, 115 (2d. Cir. 2008). In that case, during settlement discussions with the defendants, the plaintiff had consented to the use of a certain mark but later sued the defendants for infringement of that mark. Relying on statements made in connection with settlement discussions, the district court ruled that plaintiff "was estopped to claim infringement after it led the defendants to believe no claim of infringement would be brought, and the defendants then spent millions in developing the marks in reliance on that assurance." <u>Id.</u> at 113. The Second Circuit also found that "[t]o prevent a defendant from proving an estoppel by acquiescence that arose during settlement negotiations would unfairly curtail a defendant's ability to rely on that defense." <u>Id.</u> at 115; <u>see also</u> <u>Bankcard Am., Inc. v. Universal Bankcard Sys., Inc.</u>, 203 F.3d 477, 484 (7th Cir. 2000) ("It would be an abuse of Rule 408 to allow one party during compromise negotiations to lead his opponent to believe that he will not enforce applicable time limitations and then object when the opponent attempts to prove the waiver of time limitations.").

The Fourth Circuit's jurisprudence is consistent with this view. <u>See</u> <u>e.g.</u>, <u>Bituminous Const., Inc. v. Rucker Enterprises, Inc.</u>, 816 F.2d 965, 968 (4th Cir. 1987) (admitting evidence of settlement negotiations in suit by subcontractor against owner for fraud and breach of contract to show owner's understanding of its obligations under joint check agreement with subcontractor, and that subcontractor had made demand on owner for payment). Given clear authority allowing such usage, KME's request to strike the references will be denied.

### H. Hailiang's Twelfth Affirmative Defense—Unclean Hands

In its Twelfth Affirmative Defense, Hailiang alleges that KME's infringement counterclaim is barred by unclean hands because it is bringing this counterclaim "after clearly having acquiesced to HME's use of its marks . . . to gain leverage in unrelated business negotiations." [Dkt. No. 35] at 11.  KME argues that the Twelfth Affirmative Defense should be stricken under Rule 12(f) because the doctrine of unclean hands applies only to allegations that the party asserting a claim "dirtied" its hands "in acquiring the right [it] now asserts."  [Dkt. No. 43] at 9.  Hailiang responds that the relevance of the unclean hands defense to this litigation is clear—if, as alleged by the FAC, KME witnesses provided incomplete information or misleading evidence to the TTAB on which the TTAB relied to deny HME's trademark application, then such conduct directly relates to how KME "acquir[ed] the right [it] now asserts" in its infringement claims.  [Dkt. No. 40] at 37.

It is a well-settled principle of trademark law that "the doctrine of unclean hands applies only with respect to the right in suit.  What is material is not that the plaintiff's hands are dirty, but that he dirtied them in acquiring the right he now asserts."  People for Ethical Treatment of Animals, Inc. v. Doughney, 113 F. Supp. 2d 915, 921 (E.D. Va. 2000), aff'd, 263 F.3d 359 (4th Cir. 2001).  KME's infringement counterclaim results from the TTAB's decision denying registration of the HME mark after finding it confusingly similar to the KME mark and, as such, KME is asserting rights arising from the TTAB's decision. [11]  Because the FAC adequately pleads that KME's right to bring an infringement claim is a result of the USPTO declining to register the HME mark and because the FAC also alleges that KME's opposition in the TTAB

---

[11] Indeed, during oral argument on May 24, 2024, KME conceded that if the TTAB had issued the HME registration to Hailiang, there would be no basis for KME's infringement claim.  See [Dkt. No. 55] at 3-4.

proceeding involved misconduct, it has adequately alleged an unclean hands defense.  For these reasons, Hailiang's Twelfth Affirmative Defense will not be stricken.

III

For the aforementioned reasons, KME's Motion to Dismiss [Dkt. No. 37] will be granted in part and denied in part by an Order accompanying this Memorandum Opinion.

Entered this _24_ day of June, 2024.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge